[Civ. No. 4642. Third Appellate District.—January 14, 1933.]

GLADYS MOORE, Respondent, v. J. T. LEVY et al., Defendants; JAMES THOMAS, Appellant.

[Civ. No. 4643. Third Appellate District.—January 14, 1933.]

VICTOR A. MOORE et al., Respondents, v. J. T. LEVY et al., Defendants; JAMES THOMAS, Appellant.

Jesse W. Carter and Glenn D. Newton for Appellant.

L. C. Smith for Respondents.

PULLEN, P. J.—The two cases entitled above, consolidated and tried together, were instituted to recover damages resulting from the collision of two automobiles. Respondent Victor A. Moore was the owner of one of the cars involved in the collision, which was at the time being driven by his wife, Catherine L. Moore, a respondent, and seated in the rear seat of the car was his niece, Gladys Moore. The case was tried by the court sitting without a jury and judgment was rendered in favor of Victor A. Moore in the sum of $517.69 for damages to the automobile. Catherine L. Moore was awarded the sum of $2,654 on account of her personal injuries, and Gladys Moore was awarded $5,000 for the personal injuries she sustained.

Appellant maintains that the award of $5,000 to Gladys Moore and the damages awarded to Catherine L. Moore are excessive and the evidence is wholly insufficient to prove that the respective injuries complained of were the result of the accident, and that the amount awarded Victor A. Moore for damages to his automobile is excessive and not supported by the evidence; that the amended findings are

insufficient to support the judgment, and lastly, that the court had no power under section 662 of the Code of Civil Procedure to vacate the original findings and judgment without granting a new trial or reopening the case for the taking of additional evidence and that the original findings were insufficient to support the judgment.

Let us take up first the award to Gladys Moore.

Gladys Moore testified that when the collision occurred she was thrown out of the car on to the road. She was taken to a hospital in Redding, where Dr. J. E. Taylor, the examining physician, found a gouged out or punctured wound on the left leg about three and one-half inches above the knee. The injured girl was confined in the hospital for about two days and later was removed to a private home for an additional two or three days, and then returned to her home in southern California, where two further operations were performed by Dr. H. E. Tibbets, in order to relieve an abscess which had formed under the fascia lata of the thigh. She remained under the treatment and observation of her physician until September 10, 1928, or approximately two months after the infliction of the injury.

Plaintiff testified that at the time of the trial, which was approximately two and one-half years after the injury, there was still some limitation of motion, that the wound was tender to the touch and at times her foot and leg would become numb. Dr. H. E. MacDonald, who made an examination of the young lady at the time of the trial, testified that there was then about a fifty per cent limitation of extension and about a twenty-five per cent limitation of flexion. There still remained a cavity above the knee of about one and one-half inches in diameter and perhaps three-quarters of an inch in depth, practically to the bone.

The trial court found that " . . . plaintiff Gladys Moore, now Gladys McAbee, was severely and permanently injured on and about her body, having suffered a severe shock to her nervous system and a severe injury to her left leg, as a result of which plaintiff has become permanently deprived of the full use of her left leg". And further, "that by reason of said injury plaintiff was for a period of three weeks, confined to her bed, and during all of said time she suffered and still suffers great excruciating pain, and by reason of said injury, plaintiff Gladys Moore, now Gladys

McAbee, has been made ill in health and has been maimed in her said left leg immediately above the knee to such an extent that the muscles and flesh have failed to restore the form of said leg at said point, thereby decreasing the strength, use and activity of said leg, fifty per cent of normal, and that said injuries are permanent and as a result of said accident plaintiff has lost the normal sense of feeling in her toes, ankle and knee of her left leg, and that said injuries to said left leg, and each of them, are permanent, and will cause her to continue to suffer pain, mental anguish, humiliation and incapacitate her in her future activities for the remainder of her natural life''.

Appellant claims that this finding is not supported by the evidence in that there is no testimony that the injury is permanent. All of the doctors who testified as to the duration of the injury support the claim of appellant that the injuries sustained by Gladys Moore would not result in permanent disability.

Dr. Tibbets, for plaintiff, testified as follows:

''Q. And what was the condition of the thigh at that time? (Referring to September 10, 1928, the day when he last saw the patient.)

''A. There were no bone changes, no shortening and no, what I would consider to be permanent disability functionally.

''Q. What about the limitation of the motion on the muscle of the thigh? A. There was naturally a limitation of the motion at that time but no reason why it should be permanent. Q. And would that leave a permanent scar? A. It would leave a permanent scar.''

He also testified: '' . . . when I discharged the patient the wound was completely healed, and it was just, I should say, a matter of time until she would have practically a normal leg functionally.''

''Q. After a wound in the condition such as this case has healed, is it probable that any future developments in the injured portion should recur? A. I should say no. Q. And such a disability as the patient suffered, would that tend to interfere with the use of her limb in any way in the future? A. It would at the time of the damage but should eventually clear up completely without any permanent disability.''

Dr. Chester D. Sewall of Redding was called by the defendant and testified:

"Q. Would you say doctor, that there is any probability of any detrimental effect upon the plaintiff Gladys Moore, in the future, as a result of the injury she received to that leg? A. I think it will improve of what slight tenderness and what slight puckering there is; as time goes on that will let go and it will improve. Q. In other words the slight tenderness that is there now will entirely vanish. A. I should think so."

Conceding that the uncontradicted testimony shows no permanent disability suffered by Gladys Moore and that there was no testimony upon which the court could base a finding that the injuries were permanent, can this court nevertheless say that the award of $5,000 evidences an abuse of discretion? The rule in this type of case is well stated in the case of *Kelley* v. *Hodge Transp. System,* 197 Cal. 587 [242 Pac. 76, 81]:

"Unless we are able to say that the award of the jury and sustained by the trial Court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to shock the sense of justice, and raise at once a strong presumption that it was the result of passion, prejudice or corruption, rather than honest or sober judgment, this court may not exercise the power of revision."

Measured by the foregoing, we cannot say, regardless of whether the injuries were permanent in character or temporary only, that either the record or the award raises any presumption that the amount allowed Gladys Moore is the result of an abuse of discretion or founded upon passion or prejudice.

The amount of damages was in this case first committed to the sound discretion of the trial judge, and thereafter upon motion for a new trial was again reviewed and considered and the facts and evidence reweighed. Upon appeal, the decision of the trial court upon the subject cannot be set aside unless the verdict is "so plainly and outrageously excessive as to suggest at the first blush, passion or prejudice or corruption".

"The law does not attempt to fix any precise rules for the admeasurement of damages but, from the necessity of

the case, leaves their assessment to the good sense and un-biased judgment of the jury'' or if a jury is waived, then to the trial judge. ''The leading object of such action is to obtain reasonable and just compensation for the injury sustained, comprehending both the present and future.'' (*Aldrich* v. *Palmer*, 24 Cal. 513.)

Appellant also contends that the principal injuries of respondent Gladys Moore were the result of an abscess which had no connection with the injuries caused by the automobile collision and were aggravated by her delay in securing medical attention.

Dr. Tibbets testified that when he saw Gladys Moore on July 28, 1928, in Whittier, California, some sixteen days after the collision before referred to he found an abscess under the fascia lata of the left leg which required an in-cision to drain the area, and upon opening the tissues removed pus and old blood clots which indicated a prelimi-nary blood clot due to a hemorrhage from some traumatic cause, and that it would require from one to two weeks for such clot to break down into an abscessed condition. The physician in Redding who first treated the young lady had her under his charge approximately four days and she was told by him, so she testified, that he thought she would be all right, but apparently the blood clot was not absorbed and the abscessed condition was the result. From the evi-dence in the case the trial court can clearly draw the conclusion that the abscess was the result of the injury and that the patient was not remiss in allowing a period of approximately two weeks to pass without consulting a doctor after receiving the first treatment in Redding.

It therefore appears from the enumeration of the in-juries sustained by Gladys Moore, and regardless of whether they are temporary or permanent, this court cannot say as a matter of law that $5,000 is excessive.

As to Catherine L. Moore, she testified she was driv-ing their automobile and the collision threw her against the steering-wheel so violently that her stomach was injured, and whereas she had never, before the accident, had any pain, but afterward she had pains ''through the stomach and back, colicky pains'', and had been under the treat-ment of physicians for several months and as a result of these pains she was at times unable to perform her house-

hold duties and was compelled to have someone else do the household work for her.

Dr. MacDonald made a physical examination of Mrs. Catherine L. Moore just prior to the trial and found that she had a retroverted womb. When asked if that condition could have been brought about by external violence he said he was of the opinion that it could.

Dr. Sewall found from his examination of the witness that such a condition existed but described its cause as usually congenital and very improbably due to a bruising of the abdomen. This testimony, however, merely raised a conflict which the trial court resolved in favor of the plaintiff.

What we have said concerning the contention of appellant that the award to Gladys Moore was excessive is also applicable to the case of Catherine L. Moore. As was said by Mr. Justice R. L. Thompson in the case of *Rannard* v. *Harris*, 121 Cal. App. 281 [8 Pac. (2d) 864, 866]:

"The determination of a sum of money which will be deemed to adequately compensate one for damages suffered on account of personal injuries sustained and the pain and suffering incident thereto, necessarily rests largely in the sound discretion of the trial judge or of the jury. This discretion may not be interfered with unless it clearly appears that the amount which is awarded is so grossly excessive as to shock the conscience or enforce the inference that it is the result of passion or prejudice. (Citing cases.) The record in the present case impels no such conclusion. In contemplation of the foregoing well established rule of law, the judgment is not excessive."

█ The next point is that the award to Victor A. Moore for damages to his automobile is not supported by the evidence. The automobile was taken to a garage in Redding where certain repairs were made, but as to these items appellant makes no complaint. The witness, when interrogated about repairs made later in Los Angeles, testified:

"Q. Were you present in Los Angeles when the repairs were made to the car? A. I wasn't there every bit of the time they were putting them in, but I was always in when they were working, practically all of the time down there. I was there quite a bit of the time, because at that time I wasn't working; I was hobbling around down there."

Without further proof and over the objection of appellant, the witness was allowed to testify as to the amount of the repair bill paid by him to the mechanic in Los Angeles. He also was asked, over the objection of appellant, if there was any part replaced in the car in the items paid to the Los Angeles garage which were not made necessary by reason of the collision, but he was not asked nor did he state what repairs were made in Los Angeles.

Appellant also offered in evidence the bill or invoice of the work and labor performed by the Los Angeles garage but it was admitted for identification only and was never received in evidence. Plaintiff Moore testified that no parts were replaced in the car that were not damaged or injured by the collision but that statement is a conclusion of the witness and there was no testimony showing that he was qualified to answer the question either by training or by observation. We believe that the court erred in admitting the testimony as to the repairs in Los Angeles.

The case of *Menefee* v. *Raisch Improvement Co.*, 78 Cal. App. 788 [248 Pac. 1031, 1032], discusses quite fully the measure of damage and the proof of repairs in a case such as this:

"The measure of damages in cases of this character is the difference in the value of the property immediately before and immediately after the injury, subject to the proviso that if the property be susceptible of repair at an expense less than such difference the measure of damages is the reasonable cost of the repairs; (citing cases) and it is unnecessary to prove that the liability incurred for such repairs has been discharged (*Kincaid* v. *Dunn*, [26 Cal. App. 686, 148 Pac. 235], *supra*). That plaintiff caused the car to be repaired and incurred a liability therefor is clearly shown, and an itemized statement rendered by those performing the services was introduced in evidence without objection. The statement was hearsay and insufficient alone to prove the reasonable value of the repairs, their necessity, or that the time consumed in making them was reasonable [citing cases]; but having been admitted without objection the statement therein that certain material and labor had in fact been furnished not having been contradicted, the court was justified in accepting it as evidence tending to

prove the facts stated (*Lucy* v. *Davis*, 163 Cal. 611 [126 Pac. 490]).''

Says Corpus Juris:

''Competent evidence of the cost of repairs may be admitted, and one who is qualified from his proved experience to be a judge of the amount ordinarily charged, at the usual and market rates for the work and material necessary to repair a motor vehicle, and who supervised the making of repairs upon the vehicle in question, is a competent witness as to the reasonable cost thereof. Evidence of the amount expended for repairs is admissible only as it may bear upon the reasonable cost of those reasonably proper and necessary, but the actual cost of repairs may be shown in connection with evidence that such cost was reasonable, and a bill for repairs may be admitted to prove the reasonable cost, when there is testimony to the effect that the items contained therein are correct and that the charges therefor are just and proper, but not in the absence thereof. Thus a repair bill merely identified by the manager of a shop which made the repairs who did not supervise them, or have any personal knowledge thereof, is not admissible. It is error to admit testimony as to the cost of repairs other than those shown to be due to the injuries complained of.'' (42 Corpus Juris, 1297.)

Findings of fact and conclusions of law were originally signed and filed in this case and thereafter were vacated and set aside and amended findings filed.

Appellant urges various specific objections to the form of these amended findings and while we must concede they are somewhat inartistically drawn we believe that taken as a whole, they cover the issues as presented and determined. The principal objection of appellant seems to be that the trial court had no power under section 662 of the Code of Civil Procedure to vacate the original findings of fact without granting a new trial or reopening the case for the taking of additional testimony.

Section 662 of the Code of Civil Procedure provides: ''In ruling on such motions, in a cause tried without a jury, the court may, on such terms as may be just, change or add to the findings, modify the judgment in whole or in part, and grant a new trial on all or part of the issues, or in lieu of granting a new trial, may vacate and set aside the find-

ings and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment entered.''

The courts of review have on several occasions had before them the construction of section 662 of the Code of Civil Procedure and in no case has the scope of the section been limited. (*Heron* v. *Bray*, 122 Cal. App. 79 [9 Pac. (2d) 513]; *Holland* v. *Superior Court*, 121 Cal. App. 523 [9 Pac. (2d) 531]; *Meda* v. *Lawton*, 214 Cal. 588 [7 Pac. (2d) 180]; *Bancroft* v. *Cullen*, 213 Cal. 208 [2 Pac. (2d) 353].)

No additional testimony was necessary to enable the court to correct the findings as filed, the corrections being for the purpose of clarifying the original findings of the court.

The judgments in favor of respondents Gladys McAbee, formerly Gladys Moore, and respondent Catherine L. Moore are affirmed, and the judgment in favor of respondent Victor A. Moore is modified by striking therefrom the sum of $246.49, and as so modified is affirmed.

Respondents to recover costs herein.

Thompson (R. L.), J., and Plummer, J., concurred.