[Civ. No. 18444.    First Dist., Div. Two.    July 20, 1959.]

HARRY PRUYN, as Special Administrator, etc., Respondent, v. TRUMAN S. WATERMAN, as Executor, etc., Appellant.

Raymond H. Levy for Appellant.

John K. Hagopian for Respondent.

KAUFMAN, P. J.—This is an appeal in an action to quiet title to a one-half interest in certain personal property, brought by the plaintiff, Harry Pruyn as special administrator of the estate of his mother, Clara Pruyn. The defendant, T. S. Waterman, as executor, listed the disputed property as an asset of the estate of John L. Pruyn, the deceased husband of Clara. The trial court found that the disputed property was community property, over one-half of which Clara Pruyn had a right of testamentary disposition, and entered judgment for the plaintiff. Defendant argues that on the death of Clara, the property vested in its entirety in John L. Pruyn, as the surviving joint tenant, and that there is no estate to be probated as the estate of Clara Pruyn.

Does the evidence support the findings that personal property purchased with community funds but to which title is held in joint tenancy form by a husband and wife, was held by the parties as community property? That is the basic question presented by this appeal. There are also the contentions that the trial court erred in considering any evidence besides the instruments of title and its conclusions of law; and that the defendant (appellant herein) was deprived of due process of law during the trial.

The facts are as follows: Clara and John Pruyn were married on July 31, 1926. All of the property owned by Clara and John Pruyn consisted of notes secured by deeds of trust and shares or certificates in savings and loan companies, all of which were in joint tenancy form. At the trial, it was stipulated that all the disputed property was community property in source, title to which stands in joint tenancy form, and that the parties had not acquired any property by gift or inheritance.

On March 30, 1955, Clara Pruyn executed a will, bequeath-

ing her share of the properties to the plaintiff Harry Pruyn (her son by a prior marriage) and several other legatees. On May 23, 1955, John L. Pruyn executed a will which declared "all my property is the community property of myself and my beloved wife, Clara Pruyn," and which acknowledged that his wife had made a will and had the right to make a will, and which also acknowledged Harry Pruyn as his son.

Clara Pruyn died on June 12, 1955. Her will was duly filed with the county clerk. On June 20, 1955, John L. Pruyn commenced proceedings under Probate Code, section 1170, to declare the death of his wife and to terminate the joint tenancies in their properties. On August 15, 1955, John L. Pruyn executed a codicil to his will. By this codicil he purported to dispose of his half of the property, as well as the property subject to administration under Clara's will. John L. Pruyn died on January 3, 1956.

We will first dispose of defendant's argument that the joint tenancy form of the instruments of title is conclusive of the intention of the parties, and that therefore the trial court erred in considering any other evidence and denying his motion for a nonsuit. Defendant's argument is based on section 7604 of the Financial Code and section 1837 of the Code of Civil Procedure. Section 7604 of the Financial Code reads as follows:

"The purchase or acceptance of shares or investment certificates in the name of two or more persons as joint tenants or in form to be paid to any of them or the survivors of them, in the absence of fraud or undue influence, *is conclusive evidence in any action or proceeding to which either the association or the surviving share or certificate holders may be a party*, of the intention of such share or certificate holders to vest title to such shares or certificates and dues paid on account thereof and dividends and interest thereon in the survivors." (Emphasis added.)

Section 1837 of the Code of Civil Procedure, defines "Conclusive Evidence" as "That which the law does not permit to be contradicted."

As the above quoted provision of the Financial Code has not heretofore been construed, defendant relies on *Estate of Fritz*, 130 Cal.App. 725 [20 P.2d 361] and other authorities construing similar language in former section 15a of the Banking Act,[1] to argue that no evidence outside the written instruments

[1] Superseded in 1942 by section 852 of the Banking Code, which in turn has been succeeded by section 852 of the Financial Code. (Stat. 1951, ch. 364, p. 860.)

is admissible. Even assuming for the sake of argument that the instant action is one within the provisions of section 7604,[2] we cannot agree. In the most recent interpretation of former section 15a of the Bank Act, our Supreme Court said:

"There is no doubt that under the statute the making of the deposit is conclusive evidence of the intention of the depositors at that time to vest title in the survivor. It does not follow, however, that the statute compels depositors thereafter to remain frozen to that intention. It in no way deprives the depositors of their freedom of contract to make subsequent agreements changing their interests in the account. Such freedom is expressly recognized in Civil Code, section 1698, which provides that a 'contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.' Section 15a cannot reasonably be interpreted to impair this freedom to alter one contract by another. There is nothing in its language that would justify such interpretation. The intention to which it refers is the intention manifested by the making of the deposit in the specified form and thus necessarily the intention existing at the time that form is used. Its constrained language cannot be enlarged to nullify any subsequent contracts between the depositors and thereby to repeal by implication Civil Code, section 1698." (*Hotle* v. *Miller*, 51 Cal.2d 541 at 545-546 [334 P.2d 849].) We think a similar construction must be applied to the language of section 7604 of the Financial Code, and that the trial court did not err in admitting evidence other than the instruments of title. Although section 7604 was not specifically involved, it has recently been held that shares of telephone stock in joint tenancy form could be changed to a different form by a subsequent executed oral agreement. (*Abbey* v. *Lord*, 168 Cal.App.2d 499 at 500-504 [336 P.2d 226].) ■ As to defendant's motion for a nonsuit, the evidence must be interpreted most strongly against the defendant and in favor of the plaintiff. (*Goldstone* v. *Merchants' Ice & etc. Co.*, 123 Cal. 625 [56 P. 776].) The record indicates that the defendant's motion was properly denied.

---

[2] By its terms, section 7604 applies only to any proceeding to "which . . . the surviving share or certificate holders may be a party." The initial construction of the language in former section 15a, indicated that the language referred only to an action where one of the joint owners is dead. (*Hill* v. *Badelj y*, 107 Cal.App. 598, 604 [290 P. 637].) Furthermore, section 7604 did not become operative until 1953 (Stat. 1951, ch. 364, p. 1022) and the record here does not disclose when the disputed properties were acquired.

We come now to defendant's major contention that the evidence is insufficient to support the trial court's finding that the parties intended the property to be community property and that such evidence was erroneously admitted. Before briefly reviewing the evidence before the trial court, it must be pointed out that our function is only to determine whether there is substantial evidence to support the conclusion reached by the court below. (*Wynn* v. *Wynn,* 170 Cal.App.2d 484 at 486 [338 P.2d 930].)

As indicated by the trial court in its excellent memorandum opinion, apart from the stipulation of counsel for the respective parties that the original character of the property was community, the evidence as to the intention of the parties consisted of three items: First, the will of John L. Pruyn, executed at a time when Clara Pruyn was still alive. This will declared in paragraph "Fourth" that ". . . all of my property is the community property of myself and my beloved wife, Clara Pruyn." Such declarations in a will as well as oral statements made by the decedent that certain property was community property are admissible. (*Bias* v. *Reed,* 169 Cal. 33 [145 P. 516]; see also *Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1].) The codicil which revoked this paragraph of the will was dated after the death of the wife, at which time the community has terminated. The evidence is uncontroverted that the only property owned by the husband on May 23, 1955, the date of the original will, was the disputed property, the source of which was community.

Second, defendant Waterman, an attorney testified as follows in regard to the will of John L. Pruyn:

"THE COURT: Who prepared the will?

"THE WITNESS: I interviewed Mr. Pruyn, he told me exactly what he wanted. Mr. Levy was present. We made notes at the time. The will was subsequently dictated to the machine, Dictagraph Machine, and transcribed by the secretary, and was subsequently executed.

"THE COURT: There is no question about the will, but we are concerned about the fourth paragraph which says,

" 'All of my property, the community property of myself and my beloved wife Clara Pruyn.'

"You prepared this will, didn't you?

"THE WITNESS: A. Uh-huh.

"THE COURT: Where did you get that statement?

"THE WITNESS: A. This will was dictated, as I said, into the machine, and, as I recall, that was dictated from notes that

were made in a previous conference with Mr. Pruyn as to what he wanted, and then he came into the office and he read it.

"THE COURT: He read the will?

"THE WITNESSS A. That's right, and I discussed the various provisions with him, and he said that is what he wanted."

Third, there were admitted into evidence an inheritance tax affidavit and community property affidavit filed by John L. Pruyn in the above-mentioned action filed under Probate Code, section 1170. Both of these affidavits substantiate the stipulation of counsel that the disputed property was acquired from the earnings of the husband during the marriage. These affidavits were properly admitted as declarations against interest. (Code Civ. Proc., § 1853; *Estate of Hill*, 167 Cal. 59 [138 P. 690]; *Estate of Raphael*, 91 Cal.App.2d 931 [206 P.2d 391].)

In addition, plaintiff's testimony established a conversation between the Pruyns (shortly before the wills were executed) evidencing an agreement. While, as defendant points out, such evidence is weak, it cannot here be said to be unconvincing or unsubstantial when viewed in the light of the evidence reviewed above. ██ It is elementary that a husband and wife may change the status of their property from separate to community by an executed oral agreement. (*Kenney* v. *Kenney*, 220 Cal. 134 [30 P.2d 398].) ██ All that is required to show an executed oral agreement of transmutation is proof of the parties' acts and conduct in dealing with their property. (Estate of Raphael, *supra*.) ██ The status of the property may be shown by the very nature of the transaction or appear from the surrounding circumstances. (*Borgerding* v. *Mumolo*, 153 Cal.App.2d 821 [315 P.2d 347]; *Lawatch* v. *Lawatch*, 161 Cal.App.2d 780 [327 P.2d 603].) ██ Here, the conclusion is inescapable that the record justifies the findings of the trial court.

As to the defendant's contention that the trial court also erred in its conclusions of law, we must point out that in *Sandrini* v. *Ambrosetti*, 111 Cal.App.2d 439 [244 P.2d 742], it was held that acknowledgment by the spouses in the presence of each other that each had power of testamentary disposition over joint tenancy property, was evidence of the intent of the parties to regard their property as community. ██ In *Estate of Jameson*, 93 Cal.App.2d 35, the court stated at pages 41-42 [208 P.2d 54]:

"A declaration in a deed or other instrument that spouses are to take as joint tenants raises the presumption that the

legal title is in the parties in accordance with such language (*Chamberlain* v. *Chamberlain*, 2 Cal.App.2d 684, 687 [38 P.2d 790]) ; and destroys the statutory presumption that the property is community; such conveyance creates a joint tenancy in which the interests of the spouses are separate property. (*Launer* v. *Griffen*, 60 Cal.App.2d 659, 664 [141 P.2d 236].) Nevertheless, the case of *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905], holds, 'It is the general rule that evidence may be admitted to establish that real property is community property even though title has been acquired under a deed executed in a form that ordinarily creates in the grantee a common law estate with incidents unlike those under the law of community property. . . . It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property. (*Hulse* v. *Lawson*, 212 Cal. 614 [299 P. 525] ; *Jansen* v. *Jansen*, 127 Cal.App. 294 [15 P.2d 777] ; see *Minnich* v. *Minnich*, 127 Cal.App. 1, 8 [15 P.2d 804] ; *Horsman* v. *Maden*, 48 Cal.App.2d 635, 640 [120 P. 2d 92.])' "

We turn finally to defendant's contentions that he was denied due process of law during the trial because the trial court prematurely decided the case and signed the findings, and deprived defendant of the right to defend or file a closing brief. At the outset, it should be noted that the defendant made no objections to the alleged irregularities at the trial or motions for a new trial, and is attempting to raise these matters for the first time on appeal, which, of course, he cannot do. (See *Estate of Raphael*, 115 Cal.App.2d 525, [252 P.2d 979] and cases cited in 3 Cal.Jur.2d 628, § 152.) The record indicates that the alleged continuance was conditional, and was to be granted only if the court found that the properties were not community property, in which case the court would consider in detail the matter of the assignments and Clara Pruyn's competency. The matter was then continued for two weeks with everyone's understanding that if the defendant's motion for a nonsuit was denied, the matter would be ended. The court then asked counsel if he had any further evidence on the character of the property and defendant offered none. The court granted time to file briefs and the record indicates that the defendant's counsel filed a trial brief and a supplemental brief.

Defendant also argues that the findings of fact and conclusions of law were filed and signed without allowing the

statutory five day period to elapse. (Code Civ. Proc., § 634.) Apart from the fact that even had such an error occurred, it would not vitiate the judgment (*Treat* v. *Superior Court*, 7 Cal.2d 636 [62 P.2d 147]; *Baker* v. *Eilers Music Co.*, 175 Cal. 652 [166 P. 1006]; *Sadicoff* v. *Jackson*, 46 Cal.App. 256 [189 P. 111]), the record does not support the defendant. The record shows that on May 8, 1958, plaintiff served defendant's counsel and filed with the court, proposed findings of fact and conclusions of law. On May 16, the court itself amended the findings and signed and filed them. At this point, defendant attempted to submit counterfindings of fact and conclusions of law. The record shows a letter from the court to the defendant's counsel stating that the counterfindings (mailed on May 17) were being returned as the court had already pointed out that the matters could be taken up by a motion for a new trial.     Nor is there any merit in defendant's contention that the court erred in its nunc pro tunc order of June 12, 1958, which order confirmed the time granted for filing briefs and submitting the cause for judgment as of March 27, 1958. The record indicates that defendant understood that the matter was submitted as of March 27, as he filed two briefs, one on March 27 and one on April 4. There is therefore no merit to defendant's final contentions nor any basis for granting his motion to augment the record on appeal.

We conclude that the judgment finds ample support in the record before us.

Motion to augment denied.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 16, 1959.